IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ALBERT P.,

                      Plaintiff,

        v.                                  Civil Action No.
                                            1:21-CV-1113 (DEP)


COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.

_____

APPEARANCES:                      OF COUNSEL:

FOR PLAINTIFF

KIRK & TEFF, LLP              DREW CHISHOLM, ESQ.
10 Westbrook Lane
P.O. Box 4466
Kingston, NY 12402

FOR DEFENDANT

SOCIAL SECURITY ADMIN.      JUNE L. BYUN, ESQ.
6401 Security Boulevard
Baltimore, MD 21235


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


DECISION AND ORDER[1]

_____

[1]      This matter is before me based upon consent of the parties, pursuant to 28 U.S.C. § 636(c).

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. § 405(g), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that he was not disabled at the relevant times and, accordingly, is ineligible for the disability insurance ("DIB") benefits for which he has applied.  For the reasons set forth below, I conclude that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in September of 1973, and is currently forty-nine years of age.  He was forty-two years old in September of 2016, which is both when he filed his application and when he originally alleged he became disabled.[2]  Plaintiff stands five feet and ten inches in height, and weighed approximately one hundred and ninety-five pounds during the relevant time period.  Plaintiff has stated that he lives in a house with his wife in Catskill, New York.

In terms of education, plaintiff reports that he earned his GED and

---

[2]    Plaintiff later amended his alleged onset date to March 1, 2018.  Administrative Transcript ("AT") at 36.  I note that the ALJ states the amended onset date was March 11, 2018, while plaintiff variously cites the date in his brief as March 1, 2018, or March 3, 2018.  AT 10; Dkt. No. 7, at 7, 17.  I acknowledge these discrepancies, but find that they do not have any impact on the outcome of this appeal.

obtained a commercial driver's license.  He has worked in the past primarily in the construction field as a laborer and truck driver.  Plaintiff stopped working in 2016 when he injured his right knee while pulling a trailer at work.

Physically, plaintiff alleges that he suffers from pain in both knees that has been addressed at various times through multiple surgeries.  He has received treatment for his knee impairments with Dr. Robert Schneider, Dr. Alexander Golant, and sources at New York Presbyterian Medical Group.  Plaintiff also received multiple extended courses of physical therapy at various times related to his pain during post-surgical recovery.  Plaintiff additionally alleges that he suffers from depression, anxiety, and posttraumatic stress disorder ("PTSD"), for which he has received treatment from providers at the Greene County Mental Health Center and licensed clinical social worker ("LCSW") Carol Sayle.

Plaintiff alleged at the administrative hearing related to his application for benefits that he was unable to work during the relevant period due initially to pain and dysfunction related to his right knee, which he injured at work in 2016, and later due to additional issues concerning his left knee, which worsened as a result of overusing it while his right knee was healing from surgery.  Before surgery and while his knees were healing, he was

limited in his ability to walk and stand, and also experienced instability in

his knees that resulted in multiple falls.  Plaintiff also reported that sitting for

long periods of time with his knees bent caused pain, and that he still uses

a cane to ambulate because of pain and instability.  Plaintiff additionally

reported that he suffers from mental impairments, particularly related to the

stress and anxiety surrounding his physical injuries and inability to work,

but that his anxiety and depression improved somewhat once he was

approved for treatment under Worker's Compensation and underwent the

surgeries to fix his knee issues.

II.     PROCEDURAL HISTORY

        A.     Proceedings Before the Agency

        Plaintiff applied for DIB payments under Title II of the Social Security

Act, on February 3, 2016.  In support of his application, he claimed to be

disabled due to injuries in his bilateral knees with a history of multiple

surgeries, a back injury, right shoulder pain, right hip bursitis, and anxiety.

        A hearing was conducted on November 23, 2020, by ALJ Asad M.

Ba-Yunus to address plaintiff's applications for benefits.  ALJ Ba-Yunus

issued an unfavorable decision on December 11, 2020, concluding that

plaintiff was not disabled at any point during the relevant period, based on

plaintiff's amended alleged onset date through the date of his decision.

4

That opinion became a final determination of the agency on August 10, 2021, when the Social Security Appeals Council ("Appeals Council") denied plaintiff's request for review of the ALJ's decision.

B.     The ALJ's Decision

In his decision, ALJ Ba-Yunus applied the familiar, five-step sequential test for determining disability.  At step one, he found that plaintiff has not engaged in substantial gainful activity during the relevant period. Proceeding to step two, ALJ Ba-Yunus found that plaintiff suffers from severe impairments that impose more than minimal limitations on his ability to perform basic work functions, including a major depressive disorder, a generalized anxiety disorder, PTSD, a right knee meniscal tear status post cartilage transplant, a left knee meniscal tear status post cartilage transplant, chondromalacia of the right patella, and traumatic arthropathy of the right knee.

At step three, ALJ Ba-Yunus examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of those listed conditions, specifically considering Listings 1.02, 12.04, 12.06, and 12.15.

ALJ Ba-Yunus next surveyed the available record evidence and

5

concluded that, during the relevant time period, plaintiff retained the

residual functional capacity ("RFC") to perform a range of sedentary work

with the following additional restrictions:

> he may occasionally balance, stoop, and climb
> ramps/stairs; but may never kneel, crouch, crawl, or
> climb ladders/ropes/scaffolds; must avoid hazards
> including unprotected heights and operating a motor
> vehicle; would require an assistive device such as a
> cane, for balance and ambulation; may have
> occasional interaction with supervisors; frequent
> interaction with coworkers and the general public;
> and can tolerate occasional changes in a routine
> work setting.

ALJ Ba-Yunus found at step four that, with the above RFC, plaintiff is

unable to perform any of his past relevant work.  Proceeding to step five,

the ALJ elicited the testimony of a vocational expert ("VE") regarding how

plaintiff's limitations would impact his ability to perform other available work

in the national economy and concluded, in light of the VE's testimony, that

plaintiff remains able to perform such work, citing as representative

positions those of document clerk, addressor, and surveillance system

monitor.  Based upon these findings, ALJ Ba-Yunus concluded that plaintiff

was not disabled during the relevant period.

C.    This Action

Plaintiff commenced this action on October 13, 2021.[3]  In support of his challenge to the ALJ's determination, plaintiff argues that the ALJ (1) erred by failing to provide an explicit consideration of why a closed period of disability should not have been granted between March 1, 2018, and October 16, 2020, (2) failed to properly consider the impact of his multiple surgeries, recovery time, and frequent physical therapy appointments on his rate of potential absenteeism, despite the vocational expert's testimony that the amount of absenteeism supported by those factors would be in excess of what would be tolerated by employers, and (3) failed to discuss Social Security Ruling ("SSR") 76-4a when finding that a closed period of disability was not warranted.  Dkt. No. 7.

Oral argument was conducted in this matter, by telephone, on February 21, 2023, at which time decision was reserved.

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is

---

[3]      This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in the recently enacted Supplemental Security Rules and General Order No. 18.  Under those provisions, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Where there is reasonable doubt as to whether the ALJ applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must

8

be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

    B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or

whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of

10

his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).

If it is determined that it does, then as a final matter, the agency must

examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g),

416.920(g).

The burden of showing that the claimant cannot perform past work

lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it

becomes incumbent on the agency to prove that the claimant is capable of

performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether

that burden has been met, the ALJ should consider the claimant's RFC,

age, education, past work experience, and transferability of skills.  *Ferraris*,

728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    Analysis

1.    Plaintiff's Assertion of a Closed Period of Disability

Plaintiff first argues that the ALJ erred by failing to address whether

he was disabled during the requested closed period between March 1,

2018, and October 16, 2020.  Dkt. No. 7, at 7-12.  In making this argument,

plaintiff acknowledges that the ALJ discussed that he had made a request

for that closed period, but argues that the ALJ's conclusory statement that

he has "not been under a disability within the meaning of the Social

11

Security Act at any time relevant to this decision" is inadequate to provide a proper rationale for declining to find disability specifically during the closed period.  *Id.*  Plaintiff's arguments on this matter are flawed for multiple reasons.

I note, initially, that although plaintiff appears to contend that the ALJ was required to provide a fuller analysis specifically regarding why he rejected the request for a closed period, he cites no authority to support that argument.  As will be discussed, the ALJ analyzed all of the evidence, including that encompassing the requested closed period, and concluded that plaintiff was not disabled at any point during that time.  The ALJ also clearly stated at the outset of his decision that, although he was aware that plaintiff was asserting disability specifically during the closed period, he did not find that plaintiff was disabled at any time relevant to the decision, including during the closed period.  Administrative Transcript ("AT") at 10.[4] Accordingly, to the extent that plaintiff argues the ALJ had some greater duty of articulation or special analysis he was required to detail related to the requested closed period, he has not provided any authority to substantiate such a requirement.

---

[4]    The administrative transcript is found at Dkt. No. 6, and will be referred to throughout this decision as "AT __."

Similarly, plaintiff's argument that the ALJ was legally required to craft separate RFC findings for closed period and for the time following that period based on medical improvement is unpersuasive.  Plaintiff's argument appears to be premised largely on the assumption that the RFC represents what functions the ALJ believed the plaintiff to be capable of performing either before his surgeries, or after he had improved from those surgeries, and does not encompass his functional abilities during periods of recovery from surgery.  Dkt. No. 7, at 8-10.  Yet, this argument ignores the clear context of the ALJ's decision as a whole.  I note, as a preliminary matter, that ALJ Ba-Yunus issued his decision in December of 2020, which means that, of the whole of the period represented by the decision, only approximately two months of that period were after the requested closed period had ended.  Further, all of the medical evidence in the record predates the ending of the requested closed period.  The only evidence from after that point that the ALJ appears to have considered when making his findings was plaintiff's testimony at the administrative hearing, which was held in November of 2020, the month following the end of that period.  Given this context, there is simply no tenable argument to be made to the effect that the ALJ's RFC was not meant to be representative of plaintiff's functioning during the requested closed period, as opposed to after he had

13

improved.  The fact that virtually all of the evidence considered was from or prior to October 16, 2020, also undermines plaintiff's argument that the ALJ should have crafted a wholly separate RFC for the two months after that date, given that there was no medical evidence from which the ALJ could have reasonably made such a detailed functional determination for that short, recent period.  Moreover, because the ALJ clearly found that plaintiff was not disabled even during the requested closed period, based on evidence from that period, any failure to create a separate RFC to reflect improvement after October 16, 2020, would necessarily be harmless, because it would have no impact on the ultimate finding that plaintiff was not disabled for any portion of the relevant period; given that plaintiff admits improvement in his condition occurred, his RFC could only have been as or less restrictive for the period following the requested closed period.

I further find that the Commissioner is correct that there was no requirement for the ALJ to make any specific findings regarding medical improvement under the regulations, because such an obligation is triggered only where the agency has found a claimant to be disabled for a temporary period of time, and the ALJ specifically found that plaintiff had not been disabled at any point during the relevant period.  *See* 20 C.F.R. § 404.1594(a) (discussing that there must be a finding of medical

improvement related to the ability to work in order to cease payment of disability benefit payments to a claimant who has been previously found to be entitled to such benefits).  Plaintiff's argument on this issue is therefore misplaced.

I note, moreover, that the ALJ's RFC finding, which is significantly restrictive from a physical point of view, is supported by substantial evidence for all the relevant times documented by the record, including during the requested closed period.  The ALJ notably found to be persuasive, to varying degrees, opinions from Dr. Adam Soyer from December of 2019, to the effect that plaintiff can lift no more than ten pounds and engage in no climbing of ladders, squatting or repetitive bending;[5] Dr. Donald Cally, from October of 2018, opining that plaintiff can perform modified duty work that is sedentary in nature;[6] Dr. Joseph Prezio, from November of 2019, concluding that plaintiff has mild to moderate limitations in his ability to engage in prolonged standing or walking, squatting, kneeling, bending, heavy lifting, or carrying objects of significant weight; and Dr. Justin Porto, from June of 2020, opining that plaintiff has

---

[5]      Dr. Soyer also provided similar or less restrictive opinions in June of 2017, October of 2017, and July of 2020.  AT 540, 556.

[6]      Dr. Cally provided an equivalent opinion also in June of 2018.  AT 536.

moderate to marked limitations in his abilities for prolonged standing and walking, bending, heavy lifting, and carrying.  All of these opinions are generally consistent with the ALJ's RFC finding limiting plaintiff to a range of sedentary work with a restricted ability to perform postural activities. Despite the fact that plaintiff admittedly had relatively brief periods where he was recovering from his surgeries, there does not appear to be any opinion evidence that would substantiate an inability to perform the requirements of the RFC for a period of twelve consecutive months, as would be required to establish disability, nor indeed is there any opinion evidence that appears to materially contradict the ALJ's RFC findings.  I note that, out of an abundance of caution, the ALJ further included in the RFC, based on the medical evidence and plaintiff's own testimony, a limitation that plaintiff requires the use of an assistive device for balance and ambulation.  AT 15.

The medical treatment evidence also provides substantial support for the ALJ's findings.  Plaintiff suffered from some symptoms of tenderness, pain, mildly antalgic gait, and decreased range of motion in his right knee following an injury in the second half of 2016.  AT 435, 497-98, 500, 504-05, 525.  He underwent a debridement surgery in February of 2017, but continued to endure symptoms such as pain, antalgic gait, tenderness, and

limited range of motion, which also persisted after an arthroscopy in November of 2017.  AT 318, 324, 326, 416, 458-59, 470, 481, 539-40, 555. Plaintiff then underwent a right knee matrix-induced autologous chondrocyte implantation ("MACI") surgery in March of 2018.  AT 594-95. In May of 2018, he was noted to be doing well, his pain was controlled without medication, and he was partially weightbearing with crutches.  AT 471. The following month, plaintiff reported that, although he still had decreased range of motion and weakness in his right knee, the surgery had helped significantly with his pain, and he was observed to have a mildly antalgic gait, with limited range of motion, some residual pain and swelling, and some weakness in his quadricep.  AT 534-35.  By July of 2018, he was ambulating without a brace or assistive device and was not displaying mechanical symptoms, although he began to report issues with his left knee.  AT 484.  Subsequent treatment notes from 2018 and 2019 document that plaintiff's right knee functioning was fairly good, with some limitation on range of motion and lingering pain related primarily to the surgical screws, which gradually lessened until the screws were eventually removed in August of 2019.  *See e.g.*, AT 447, 476, 494, 516-17, 531, 548, 566, 756.  By September of 2019, plaintiff reported he no longer had a burning sensation in his right knee and the only pertinent positive finding in

the right knee after that time is some decrease in range of motion; plaintiff specifically reported in April and May of 2020 that his right knee had been "excellent" since the surgeries.  AT 490, 716, 1315 1327, 1332, 1308.

As was mentioned, plaintiff began reporting symptoms in his left knee around July of 2018. He was observed to have symptoms of tenderness, pain or discomfort, and diminished range of motion in the left knee during the remainder of 2018 and through August of 2019, when he underwent surgery on the left knee.  AT 401, 447, 476, 516-17, 531, 567.  Following that surgery, he used a brace and crutches as needed, but just a few weeks later he reported to his physical therapist that he was not using his knee immobilizer as directed not only because he had lost it, but also because the brace made it difficult for him to walk and get into his truck. AT 716.  However, the pain in plaintiff's left knee worsened in November of 2019, and he was observed to have decreased range of motion and tenderness in that knee through July of 2020, when further surgery was recommended.  AT 1247, 1309, 1315, 1328-29, 1334.  Plaintiff underwent that surgery in September of 2020.  AT 1320.

These treatment records show that, although plaintiff suffered from some symptoms during portions of the relevant period, the ALJ had a reasonable basis for concluding that those symptoms did not preclude his

ability to perform the range of sedentary work expressed in the RFC

finding.  They generally show that plaintiff had positive outcomes and

symptom relief from his surgeries, and that the documented symptoms,

both pre- and post-surgery do not support his allegations of a severe

inability to walk or perform other activities.  I also reiterate, as was

discussed above, that the various sources who rendered opinions

throughout the period covered by the above summary concluded that, even

with such symptoms, plaintiff remained capable of certain levels of work,

albeit with restrictions.  Based on the evidence cited above, I conclude that

the ALJ's RFC finding is supported by substantial evidence.

Lastly, plaintiff argues the ALJ erred by failing to discuss SSR 76-4a

when assessing the requested closed period of disability.  He specifically

maintains that the facts of this case are so analogous to those outlined in

that SSR that the ALJ should have considered it to be controlling of the

outcome here.  Dkt. No. 7, at 16-17.  I agree with the Commissioner that

SSR 76-4a is inapplicable to the circumstances of this case.  That ruling,

which is based upon findings from an appeal decided by the Appeals

Council, stands for the proposition that a presumption that a claimant was

engaging in substantial gainful activity during short-term work attempts can

be rebutted by affirmative evidence showing that his or her impairments

19

precluded sustained occupational activity by allowing only short periods of work that aggravate the impairment.  SSR 76-4a.  Unlike the claimant in that ruling, there is no evidence that plaintiff attempted to work at any time during the requested closed period while he was recovering from his surgeries, and he has not been denied benefits based on a finding that he engaged in preclusive substantial gainful activity.  Indeed, the ALJ found that, despite the interruptions of the various surgeries and recovery times, there was no period of time in which plaintiff was unable to perform the level of sedentary work encompassed by the RFC finding.  Because the ALJ therefore found plaintiff was not disabled based on the substantive evidence in this case rather than based on any earnings plaintiff had as a result of work activity, SSR 76-4a is simply not applicable in this case and there was no requirement for the ALJ to consider it.

2.    The Issue of Absenteeism

Plaintiff next argues that the ALJ failed to account for the fact that he would require more than two or three absences per month based on his multiple documented surgeries, the resulting healing time, and the fact that he attended physical therapy approximately three times per week during portions of the relevant period, despite the fact that the vocational expert specifically testified that such absences would render him unemployable.

20

Dkt. No. 7, at 12-15.  I find this argument too to be unpersuasive.

Regarding plaintiff's surgeries and their recovery times, although it is true that plaintiff had periods, some lasting a few months, during which he was recovering from his knee surgeries, that fact did not require the ALJ to find an ongoing need for absenteeism as a general matter.  An RFC determination is intended to represent a claimant's maximum ability to perform certain functions and abilities throughout a certain period of time on a regular and continuous basis, and does not represent discrete periods of time related to every fluctuation in a claimant's condition.  *Wojciechowski v. Colvin*, 967 F. Supp. 2d 602, 610 (N.D.N.Y. 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)).  Although it is undeniable that there were discrete periods when plaintiff had reduced functioning post-surgery, in that he was cautioned to use crutches or a brace and to avoid weightbearing, the evidence shows nonetheless that, once the appropriate time to recover from his surgeries had passed, plaintiff's functioning and pain improved.  Plaintiff offers nothing but his own supposition that he was unable to perform work as described in the RFC during the entirety of his recovery periods due to being directed to use crutches, a knee brace, and engage in limited weightbearing for short periods of time post-surgery.  As was discussed above, the medical opinions, including those from during

times when plaintiff was still actively healing from his surgeries, do not generally suggest that plaintiff was unable to perform a range of sedentary work.  The periods of recovery therefore do not represent an indication of plaintiff's ongoing or usual need for absences, particularly when considered related to the fairly restrictive limitations included in the RFC.

As to plaintiff's frequent requirement to attend physical therapy appointments, as the Commissioner argues, there is simply no reason to believe that those appointments, even occurring three times per week, would require a finding that plaintiff would have three full-day absences from work per week.  It is simply not clear that the mere fact of needing to attend physical therapy would require plaintiff to be absent for an entire day of work, particularly as the relevant physical therapy treatment records indicate that the sessions typically lasted for approximately an hour.  *See Alysha C. v. Comm'r of Soc. Sec.*, 20-CV-1178, 2022 WL 464239, at *6 (W.D.N.Y. Feb. 15, 2022) (concluding there was no error in ALJ's finding that physical therapy appointments would not result in excessive absenteeism where plaintiff cited no evidence that her appointments, each lasting thirty-five or forty minutes, would require her to miss an entire day of work or could not have been scheduled differently to prevent absenteeism).  Further, the ALJ acknowledged in his discussion of the evidence that

plaintiff attended "extensive" physical therapy, and therefore considered that therapy when assessing the RFC.  *See Casey Patricia S. v. Saul*, 18-CV-1328, 2019 WL 6134414, at \*7 (N.D.N.Y. Nov. 19, 2019) (Stewart, M.J.) (rejecting argument that the ALJ ignored evidence of frequent treatment that allegedly would cause absences because the ALJ had described the plaintiff's treatments at length in the decision).  Lastly, no medical source opined that plaintiff would require absences from work as a result of his need for treatment.  Because there is no indication that the ALJ ignored the evidence of plaintiff's physical therapy treatment and the evidence does not clearly substantiate that plaintiff would have required absences, I find no basis for second-guessing the ALJ's determination that a need for absences was not warranted by the evidence.

IV.  SUMMARY AND ORDER

After considering the record as a whole and the issues raised by the plaintiff in support of his challenge to the Commissioner's determination, I find that the determination resulted from the application of proper legal principles and is supported by substantial evidence.  Accordingly, it is hereby

ORDERED that defendant's motion for judgment on the pleadings (Dkt. No. 10) is GRANTED, plaintiff's motion for judgment on the pleadings

(Dkt. No. 7) is DENIED, the Commissioner's decision is AFFIRMED, and plaintiff's complaint is DISMISSED; and it is further respectfully

ORDERED that the clerk enter judgment consistent with this opinion.

Dated:     March 1, 2023
           Syracuse, NY          _____

                                 DAVID E. PEEBLES
                                 U.S. Magistrate Judge